*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAUDON PROPERTIES, LLC,

      Plaintiff-Appellant,

v

TRAINING AND TREATMENT INNOVATIONS,
INC.,

      Defendant-Appellee,

and

BOBBIE WALKER,

      Defendant.

UNPUBLISHED
February 04, 2025
12:28 PM

No. 366856
Oakland Circuit Court
LC No. 2022-193869-CK

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

FEENEY, J. (*concurring in part and dissenting in part*).

Plaintiff appeals from the trial court's final order granting a default judgment against defendant, Bobbie Walker, but its claims of error concern the trial court's earlier orders denying plaintiff summary disposition and granting summary disposition in favor of defendant, Training and Treatment Innovations, Inc. (TTI), under MCR 2.116(C)(10). While I agree with the majority's analysis on the statute of frauds and guaranty contract issues, I respectfully dissent regarding its treatment of plaintiff's promissory estoppel argument.

For me, a key to this case is the representation by defendant's housing program manager, Kevin T. Bogg, who explained in his correspondence what would transpire should plaintiff lease property to one of TTI's clients:

> A *caseworker is responsible* to meet with tenant in the property monthly *to ensure* bills are up to date and *the residence is being kept up*.
>
> If approved for property located at 15000 Leslie in Oak Park, Training and Treatment will assist Ms. Walker with paying the rent in full each month directly

-1-

to the landlord/property management. TTI's portion is $1,300.00/month, Ms. Walker is responsible for all utilities. Training and Treatment will assist the [sic] Security Deposit. [Emphasis added.]

Plaintiff continued to have reservation about renting the property to Walker and Bogg sent another correspondence, stating:

The *Case Worker is responsible to meet with Ms. Walker in the property monthly to ensure* bills are up to date and *the residence is being kept up*, assist with repairs if needed. Provide Transportation if need [sic] to appointments.

Additionally, my responsibility will be to ensure all rental payment [sic] are made on time monthly and *remain in direct communication with the Property Manager if a problem arises.*

TTI will be responsible for the monthly rent of $1300.00 beginning November 1, 2018 throughout the duration of the 12 month lease. All rents will be paid by the 5th of each month. [Emphasis added.]

This persuaded plaintiff to enter into a lease agreement, which included the following language:

TENANT shall use and maintain the premises in accordance with applicable police, sanitary, and other regulations imposed by government authorities. TENANT also shall maintain the premises in neat and orderly manner. TENANT will keep premises, including equipment and fixtures of every kind and nature in good repair during the term of this lease.

* * *

TENANT shall pay for repair of all damage done to the premises and structure of which they are a part, including fire and flood damage, caused by the TENANT, their guests or invitees; they shall reimburse LANDLORD for all permit, inspection, and certification costs it incurs because of their noncompliance with this lease or its applicable laws, and they shall reimburse LANDLORD for all damages resulting from not reporting the need for repair or maintenance in reasonable timely manner. Nothing in this clause shall waive or lessen LANDLORD's obligation to maintain and repair premises under Michigan law, but LANDLORD is not liable for any loss that accrues to TENANTS because of LANDLORD'S action in reasonable fulfilling its obligations hereunder.

The lease further provided that it could "be amended in writing only, signed by all parties," that the lease was the parties' "only agreement," and that "[t]here are no other agreements, including discussions, proposals, negotiations, and representations made prior to the execution of this lease that are part of this lease unless specifically in writing."

When plaintiff regained possession of the property after Walker vacated, there had been extensive damage done, which plaintiff claimed necessitated repairs in excess of $47,000. Plaintiff

also claimed that it lost $3,900 in potential rent during the time that the property could not be rented and repairs were being made.

## I. PROMISSORY ESTOPPEL

The question then becomes whether plaintiff made out a claim under promissory estoppel. The majority concludes that, despite the trial court's errors, any error is harmless because plaintiff is unable to establish its claim under promissory estoppel. I disagree. As noted by the majority, the elements of a promissory estoppel claim include: "(1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 713; 950 NW2d 502 (2019) (quotation marks and citation omitted). The promise giving rise to an actionable claim must be clear and definite. *Bodnar v St John Providence, Inc*, 327 Mich App 203, 227; 933 NW2d 363 (2019). "To determine whether a promise existed, courts must objectively evaluate the circumstances of the transaction, including the parties' words, actions and relationship." *Id*. Moreover, "[t]he doctrine of promissory estoppel must be cautiously applied only where the facts are unquestionable and the wrong to be prevented undoubted." *Id*. (quotation marks and citation omitted).

The letters quoted above made "clear and definite" promises that (1) TTI would make rental payments in the amount of $1,300; (2) that its case worker would meet with Walker monthly to ensure that her bills were up to date and that the residence was being kept up; (3) to assist with repairs if needed; and (4) would notify the property manager if a problem arose. It is undisputed that TTI made the requisite rental payments. Whether the caseworker met with Walker monthly is unclear, but the fact that it is unknown when Walker moved would suggest that the monthly meetings did not fully occur, if at all. In any event, the extensive damage would suggest that if the monthly meetings did occur, defendant nevertheless failed to keep its promise to ensure that the property was kept up and to notify the property manager that a problem had arisen.

Of course, even if a caseworker met with Walker during a given month and discovered the property damaged, there could be no question that the caseworker complied with the alleged promise to meet, yet the property would still have been damaged. But this overlooks the fact that defendant also promised that it would assist in any needed repairs. Moreover, had the problem been discovered in a timely manner, the amount of damage would have been less extensive and further damage could have been avoided. At best, defendant might have a viable argument that it is not liable for any damage that occurred at the first monthly meeting where it should have been discovered.

Additionally, I must briefly address defendant's argument that any reliance by plaintiff would not have been reasonable.[1]  In its brief, defendant argues that any reliance could be reasonable by providing an odd analogy:

> Appellant/Plaintiff's [sic] would have the Court find the cause of action is established by merely alleging words constituting a "promise" and then just uttering the word "reliance" as creating a material issue.  Using this analysis, for example, if a young swain invites a guest for a date, that swain could truthfully say in an Affidavit, without fear of contradictory Affidavit, that he or she relied on the guest's act of accepting the invitation as a basis for the expectation of a promised kiss at the evening's *denouement*.  Assuming, *arguendo*, damages could include compensation for embarrassment and humiliation, the Affidavit on its face would create a genuine issue of material fact of reliance sufficient to overcome a summary disposition motion based on lack of reliance.

> However, as with the young swain's, Plaintiff's expectations in the case at bar were entirely one-sided, far exceeding reasonable expectations, and were based on a vague and unclear "promise" that the Trial Court found as a fact in ruling on Count I "…falls far short of a clear intention to assume legal liability for the failure to perform repairs or upkeep."

> Plaintiff's omission of proof of a genuine issue as to reasonableness of the reliance is further grounds for the Trial Court's decision to summarily dismiss the Count.

While I offer no opinion on whether a young swain does or does not have a reasonable expectation of a kiss at the end of a date, defendant's analogy is not a compelling argument in the issue before this Court.  First, defendant points us to no facts contradicting plaintiff's affidavit that it relied upon the promise.  Second, such reliance is eminently reasonable.  Indeed, there would seem to be no reason for defendant to make such a promise to a landlord except with the expectation that a landlord would rely upon such a promise in deciding to rent to a tenant that it would otherwise not accept out of concern for an inability to collect payment for tenant-created damages. In sum, defendant provides no argument, factual or legal, to contradict plaintiff's argument that it relied upon defendant's promise in deciding to rent to Walker.  And, more to the point, the trial court erred in failing to consider Mr. Einhorn's affidavit that was clearly before it.  Accordingly, I would reverse the trial court's grant of summary disposition in favor of defendant, and its denial of summary disposition in favor of plaintiff, on the promissory estoppel claim.

Accordingly, I would reverse and remand to the trial court for entry of summary disposition in favor of plaintiff on its promissory estoppel claim and a determination of damages.

/s/ Kathleen A. Feeney

---

[1] It should be noted that, while the trial court ruled in favor of defendant on the basis that plaintiff had not produced evidence of reliance, it did rule on the basis that any alleged reliance was unreasonable.  Nevertheless, I will address defendant's argument on this point.